[No. 32366.    Department Two.    April 28, 1953.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRISON ROSE, *Appellant.*[1]

[1]Reported in 256 P. (2d) 493.

*Edmund T. Brigham,* for appellant.

*Lloyd W. Ek,* for respondent.

HAMLEY, J.—On May 17, 1950, a complaint was filed in justice court charging Harrison Rose with the crime of assault in the second degree, alleged to have been committed on the previous day. Rose was brought before the justice court on the day the complaint was filed. He pleaded not guilty, waived a preliminary hearing, posted a bail bond, and was bound over to the superior court.

On May 31, 1950, an information was filed charging Rose with the crime of first degree assault, committed with a pistol on May 16, 1950. On a date not disclosed in the record, Rose pleaded not guilty to this charge. He engaged attorney Norman A. Ericson to represent him in the case. The case had not been brought to trial by January 8, 1951, on which date Ericson became prosecuting attorney of Pend Oreille county.

Ericson's former partner, Lloyd A. Eyrich, then became Rose's counsel. Eyrich thereafter informed the court that Rose desired to change his plea. Pursuant to this request, proceedings were had before the court on January 16, 1951. At the court's request, E. L. Sheldon, the retiring prosecuting attorney, represented the state. The court also requested

Ericson, because of his previous representation of Rose, to make a statement regarding the case. This was done. The court then inquired of Eyrich, representing Rose, whether Rose at that time desired to change his plea. An affirmative reply having been received, the following colloquy then took place:

"THE COURT (To the defendant): You have heretofore entered a plea of not guilty to the crime charged in the information which was filed in this court on or about the 3rd day of May, 1950, in which you were charged with a felony, that is, that you wilfully, unlawfully and feloniously, etc. (reading information). You previously entered a plea of not guilty to the crime as charged in the information. Is it your wish at this time to change your plea? THE DEFENDANT: Yes, sir. THE COURT: And withdraw the plea of not guilty heretofore entered? THE DEFENDANT: Yes, sir. THE COURT: Are you ready to plead to the crime as charged in the information? THE DEFENDANT: Yes, sir. THE COURT: What is your plea, guilty or not guilty? THE DEFENDANT: Guilty. THE COURT: Let the record show the defendant has requested the right to withdraw his plea of not guilty heretofore entered to the crime as charged in the information, which request was granted, and he now has entered a plea of guilty to the crime as charged in the information."

The court then asked Sheldon what recommendations he had to make regarding the disposition of the case. After hearing from Sheldon and Eyrich, the court questioned Rose regarding the latter's occupation and family responsibilities. The court then asked Rose if he had anything to say on his own behalf before judgment and sentence were imposed. The following exchange then occurred between Rose and the court:

"A. I would like to make it clear I didn't fire the pistol at anybody with intentions to hit them. I fired the gun in the air to call attention and stop the battle between the other two. Q. But you are guilty of firing the pistol in the brawl that was going on, is that it? A. Mr. St. Clair came out of his house. He was standing in the headlights of my car, and he had a rifle in his hand also, and he was yelling, 'kill the so and so.' Q. Were you drinking? A. I was not. I was hauling this Beatty out to see his sister. Q. Where is Beatty now? A. I don't have the slightest idea. Q. Well, you see

you became involved in serious trouble by reason of your association, isn't that true? A. Yes, sir. Q. Were you ever in trouble before? A. No, sir."

After some further colloquy, the court announced that it was the judgment and sentence of the court that Rose be placed on probation for a period of two years, and that he be confined in the county jail for a period of six months, which would be suspended during good behavior. A formal "judgment and sentence" to that effect, with the added provision adjudging Rose guilty of the crime of first degree assault, was entered the same day.

The following year, Rose became involved in a fist fight in which one George Basnaw was killed. As a result, an information was filed on April 25, 1952, charging Rose with first degree murder. On September 12, 1952, the prosecuting attorney petitioned for revocation of Rose's probation granted in connection with the first degree assault charge. The court decided to hold this in abeyance until after the trial on the murder charge. This trial was had in October, 1952, and on October 11, 1952, Rose was convicted of manslaughter.

On October 14, 1952, the petition to revoke probation came on for hearing. There was heard at the same time Rose's motion of the same day to withdraw his plea of guilty, entered on January 16, 1951. At this hearing, Rose was represented by Edmund T. Brigham, who had also been his counsel during the murder trial. The grounds stated in the motion to withdraw the plea of guilty were that this plea had been entered by Rose under a misconception of the facts and of his rights. This motion was denied on the day of the hearing. On the same day, Rose's probation was revoked and he was sentenced to serve a term of not less than five years in the state penitentiary, on the assault conviction.

On October 24, 1952, counsel for Rose filed a motion to vacate the judgment and sentence of October 14, 1952. The grounds stated for this motion were that the asserted plea of guilty entered on January 16, 1951, was in truth and fact a plea of not guilty. It was also recited in this motion

that Rose had a valid and adequate defense to the crime charged.

On November 12, 1952, counsel for Rose served and filed a notice of appeal from the judgment and sentence of October 14, 1952. The motion to vacate that judgment came on for hearing on November 18, 1952, and was, on that day, denied. Fearing that the first notice of appeal might be deemed premature, counsel, on November 24, 1952, filed and served a second such notice, directed against the judgment and sentence of October 14, 1952. A corrected second notice of appeal was served and filed on December .5, 1952, directed not only against the judgment and sentence of October 14, 1952, but also against the order of November 18, 1952, denying the motion to vacate that judgment.

The first questions presented relate to the state's motion to dismiss the appeal. This motion was argued before Department One of this court on February 13, 1953. Disposition of the motion, however, was deferred for consideration by Department Two in connection with the hearing on the merits of the appeal.

The state urges, as a ground for dismissing the appeal, that the notice of appeal was not served or filed within the time provided by law.

Where a defendant in a criminal case gives written notice of appeal, it must be served and filed within thirty days after entry of the judgment or order from which the appeal is taken. Rule on Appeal 46 (1), 34A Wn. (2d) 50. The first notice of appeal was here served and filed on November 12, 1952. It purports to be directed against the judgment and sentence of October 14, 1952. The state argues, however, that the "judgment and sentence" really brought in issue by that notice of appeal was that which was entered on January 16, 1951. Appellant contends, however, that the order of January 16, 1951, was not a final judgment and sentence and was therefore not appealable.

The order of January 16, 1951, adjudicated appellant's guilt, placed him on probation for two years, and decreed a

county jail term of six months, which was suspended. There was no penitentiary sentence.

The provision for six months' confinement in the county jail cannot be regarded as a sentence. The sentence which may be entered by the court upon a person's conviction of the crime of assault in the first degree is limited to imprisonment in the state penitentiary or reformatory. RCW 9.92.050 (Rem. Rev. Stat., § 2277); RCW 9.95.010 (Rem. Supp. 1947, § 10249-2, part). We are of the view that the prescribed jail term was merely a condition fixed by the court relative to the probation. See RCW 9.95.210 (Rem. Supp. 1949, § 10249-5b).

Because sentence was not pronounced, there was no final judgment entered on January 16, 1951. *State v. King,* 18 Wn. (2d) 747, 140 P. (2d) 283; *State v. Farmer,* 39 Wn. (2d) 675, 237 P. (2d) 734. The judgment and sentence of October 14, 1952, was therefore the first appealable order entered in this cause. It follows that the notice of appeal was timely served and filed.

As a second ground for dismissal of the appeal, the state asserts that, since the judgment and sentence recite that a plea of guilty had been entered, and since the judgment is regular on its face, the court is without jurisdiction to consider an appeal therefrom. This argument, it will be observed, relates to the appeal from the judgment and sentence of October 14, 1952, but not to the appeal from the order of November 18, 1952, denying the motion to vacate that judgment.

A plea of guilty precludes an appeal where no collateral questions, such as the validity of the statute, the sufficiency of the information, the jurisdiction of the court, or the circumstances under which the plea was made, are raised. *State v. Eckert,* 123 Wash. 403, 212 Pac. 551; *State v. Alberg,* 156 Wash. 397, 287 Pac. 13; *State v. Haddon,* 179 Wash. 669, 38 P. (2d) 227. See, also, the cases cited in 24 C. J. S. 24, Criminal Law, § 1563 (a), notes 19, 20. While the cited Washington cases all involve appeals from a justice court to the superior court, we believe the same principle applies with regard to appeals to this court.

■ The appeal from the judgment of October 14, 1952, however, does raise two collateral questions. One of these is whether any *bona fide* plea of guilty was entered. The other is whether, assuming that a valid plea of guilty was entered, the court abused its discretion in denying appellant's motion to withdraw that plea and enter a plea of not guilty. The indicated second ground for dismissal of the appeal is therefore without merit, and the motion to dismiss is denied.

Appellant argues, under his first assignment of error, that no *bona fide* plea of guilty was entered in this cause. In this connection, he calls attention to the statement he made to the court shortly after announcing his plea of guilty. This is the statement, quoted above, in which appellant asserted, in effect, that he did not fire the pistol with the intention of hitting anyone.

■ Intent to kill, or to commit a felony upon the person or property of the one assaulted, is an essential element of the crime of assault in the first degree. RCW 9.11.010 (Rem. Rev. Stat., § 2413). The information in this case charged appellant with wilfully, unlawfully and feloniously shooting one Martin St. Clair with intent to kill St. Clair. Appellant, after having previously pleaded not guilty to this charge, requested an opportunity to change his plea to guilty. His request was granted, and he thereupon voluntarily and personally pleaded guilty, being then represented by counsel. After appellant had orally announced his plea, the court requested that the record show that appellant had withdrawn the plea of not guilty and had entered a plea of guilty.

What thereafter transpired had nothing to do with the entry of appellant's plea. That act had been completed. The statement which appellant made regarding his lack of criminal intent was offered while the court was seeking information to assist it in fixing the sentence. The court apparently discounted the truth of this statement, perhaps believing that it was offered only for the purpose of obtaining leniency and not to disavow the new plea of guilty which

had just been entered. The failure of appellant or his counsel to then request a withdrawal of the plea of guilty tended to substantiate such a conclusion.

It is asserted that appellant's counsel, Eyrich, had only recently been drawn into the case and was not thoroughly familiar with the facts. But it is not represented or contended that if Eyrich had been better informed he would have advised against entry of a plea of guilty or would have acted differently after appellant made his statement disavowing intent. Appellant apparently regarded his counsel as eminently satisfactory when he was able to get appellant off with two years probation and a six-months suspended county jail sentence. It was only after the probation was revoked that appellant reached the conclusion that he had been ineffectively represented all the while.

In support of his position, appellant cites *In re Kenstrip v. Cranor,* 39 Wn. (2d) 403, 235 P. (2d) 467; *In re Burgess v. Cranor,* 39 Wn. (2d) 428, 235 P. (2d) 830; and *In re Sherry v. Cranor,* 41 Wn. (2d) 946, 249 P. (2d) 775. These were all *habeas corpus* proceedings in which it appeared that the respective defendants were not represented by counsel. In each case, moreover, there were special circumstances plainly showing that the plea was not intelligently, understandingly, or unequivocally entered.

In the case before us, appellant was represented by counsel; there were no special circumstances of the kind which were present in the cited cases; and there is no indication in the record, by affidavit or otherwise, that appellant was unaware of his rights or of what was happening to him.

The situation which was presented was strikingly similar to that which developed in *People ex rel. Hubert v. Kaiser,* 206 N. Y. 46, 99 N. E. 195. The defendant there had been charged with several crimes, including burglary in the first degree. He pleaded not guilty. Three days later, he was permitted, at his request, to change his plea to guilty. He was then examined by the court as to his nationality, age, and his acts in the house which he had entered. Judgment and sentence were then entered against him. He later ap-

plied for a writ of *habeas corpus,* contending that the answers he gave to the court after pleading guilty should have indicated to the court that he was not guilty. He argued, as appellant does here, that the plea of guilty should therefore not have been entered. In rejecting this contention, the court said:

"It is argued by the appellant that the facts, disclosed by Brandt's statements, made when arraigned, showed that the crime charged and confessed to was not made out. The trial judge, however, had the right to doubt the prisoner's statements of how he came to enter Schiff's house and of his intentions towards Schiff; by which statements he hoped to palliate his offense, after confessing to the indictment. Having received the plea of guilty, the further examination before sentence bore not upon the question of guilt, but upon the severity of the judgment to be rendered. Certainly, no application was made to withdraw his plea of guilty to the charge of burglary in the first degree and his counsel, simply, asked for clemency. If there was no breaking into the house, to constitute the crime, then was the time for the prisoner to change his plea." (p. 52)

See, also, *United States v. Norris,* 281 U. S. 619, 74 L. Ed. 1076, 50 S. Ct. 424.

In our opinion, a valid plea of guilty was entered in this case.

Appellant's second assignment of error raises the question of whether the trial court abused its discretion in denying appellant's motion to withdraw his plea of guilty and substitute a plea of not guilty.

■■ At any time before judgment, the court may permit the plea of guilty to be withdrawn and other plea or pleas substituted. RCW 10.40.170 (Rem. Rev. Stat., § 2111). Since appellant's motion to withdraw his plea of guilty was made prior to the entry of judgment on October 14, 1952, it was timely made. The appeal from that judgment brings before this court for review the order denying this motion to withdraw the plea of guilty. *State v. McDowall,* 197 Wash. 323, 85 P. (2d) 660.

■ Motions of this kind are addressed to the sound discretion of the trial court, to be exercised liberally in favor of

life and liberty. When such discretion has been exercised, the action of the court will not be disturbed on appeal, except upon a showing of abuse of discretion. *State v. Hensley,* 20 Wn. (2d) 95, 145 P. (2d) 1014.

The instant motion was filed twenty-one months after entry of the plea of guilty, and only after it became apparent that appellant's probation would be revoked. It is recited in the motion that the plea of guilty was entered under a misconception of the facts and appellant's rights. However, no affidavit in support of these assertions was filed.

At the oral argument on this motion, counsel for appellant indicated that the basis of the motion was the statement made by appellant after entry of the plea of guilty, to the effect that he did not intend to shoot anyone. Appellant's counsel made it clear, however, that he was not vouching for the truth of that statement, or representing that appellant was in fact innocent.. Counsel's words on this point are as follows:

"I am not saying that is the truth, that was the defendant's statement at the time is all. . . . As I say, what the true facts are, I don't know."

During the argument on this motion, appellant's present counsel advised the court that he did not know appellant had made this statement disavowing intent, until a few days before appellant went to trial on the murder charge. This information was apparently given in explanation of the twenty-one-months delay in filing the motion.

However, appellant's previous counsel, Eyrich, was present. at the January 16, 1951, proceedings, and knew that such a statement had been made. Moreover, even after appellant's present counsel learned these facts, he and appellant did not immediately file a motion to withdraw the plea of guilty. As a result, the trial court could be excused for concluding that appellant had elected to gamble that he would be acquitted of the murder charge and therefore retain his probation status under the plea of guilty. The following language from *People v. Bonheim,* 307 Ill. 316, 138 N. E. 627, aptly fits the circumstances here:

"The mere fact, however, that an accused, knowing his rights and the consequences of his act, hoped or believed that he would receive a shorter sentence or a milder punishment or some other favor by entering a plea of guilty than that which would fall to his lot after trial and conviction by a jury, presents no ground for permitting the withdrawal of the plea of guilty. [Citing cases.] To hold that it would, would be equivalent to saying that an accused might speculate upon the supposed clemency of a judge, with the right to retract if at any time before sentence he began to think that his expectation would not be realized."

See, also, *State v. Cimini*, 53 Wash. 268, 101 Pac. 891; *Territory v. Cook*, 7 N. M. 248, 33 Pac. 1022.

We have on numerous occasions affirmed the action of the trial court in denying a motion of this kind. Many of these decisions are cited in *State v. Hensley, supra.* In only one instance which comes to our attention have we reversed such an order. *State v. Allen,* 41 Wash. 63, 82 Pac. 1036.

In that case, the defendant pleaded guilty without representation of counsel and without the trial court specifically informing him of his rights. Moreover, his motion to withdraw the plea of guilty was supported by an affidavit alleging that he was not guilty; that he was induced to plead guilty by the promise from the police of a light sentence; and that the police did not allow communication with friends or an attorney. These allegations were not controverted.

Needless to say, the circumstances of the instant case bear no resemblance to the situation disclosed in *State v. Allen.*

In view of the considerations referred to above, we conclude that the trial court did not abuse its discretion in denying the motion to withdraw the plea of guilty.

The third assignment of error, directed against the entry of the judgment of October 14, 1952, raises no question not already discussed, and is not separately argued.

The final assignment of error brings into question the order of the trial court, entered on November 18, 1952, denying the motion to vacate the judgment and sentence. The only new argument made in support of this assignment is that, at the time the motion to vacate was argued, the court

reporter's transcript of all that had transpired at the arraignment on January 16, 1951, was before the court. As revealed by the record, however, this same transcript was called to the court's attention before it ruled on the motion to withdraw the plea of guilty.

The trial court did not abuse its discretion in denying the motion to vacate.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.

June 3, 1953. Petition for rehearing denied.